**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| ANDES INDUSTRIES, INC. and PCT INTERNATIONAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CHENG SUN LAN; KUN-TE YANG; CHI-JEN (DENNIS) LAN; POLAR STAR MANAGEMENT LTD.; EZCONN CORPORATION; and EGTRAN CORPORATION. <br><br> Defendants. | Case No. 2:14-cv-00400-APG-GWF <br><br> **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** <br> **[Dkt. ##18, 75]** |

Plaintiffs Andes Industries and PCT International claim defendants eGtran and EZconn stole intellectual property Plaintiffs use in their broadband business. Defendants move to dismiss the claim based on, among other things, lack of personal jurisdiction. Taiwanese companies,[1] they argue that they lack sufficient minimum contacts with Nevada to be haled into court here. I agree.

Plaintiffs have not pled sufficient facts to tie defendants to Nevada. Although plaintiffs argue theories such as alter ego, agency, and conspiracy, all these theories depend on plaintiffs showing that at least one defendant had sufficient minimum contacts to trigger personal jurisdiction. Plaintiffs have not done that. Accordingly, I grant defendants' motions to dismiss.

**I.   BACKGROUND[2]**

Plaintiffs develop, manufacture, and sell products for broadband communications networks.[3] They hold patents on their technology and sell their products throughout the United

---

[1] Defendant EZconn also has a principal place of business in China. (*See* Dkt. #1 at ¶ 16.)

[2] This section summarizes the facts alleged in the complaint. I assume these allegations are true only for purposes of addressing the motions to dismiss.

[3] (Dkt. #1 at ¶ 1.)

States, "including to customers who use them in [Nevada]."[4]  They are incorporated in Nevada, but their principal place of business is in Arizona.[5]

Defendants, neither of whom resides in the U.S. and both of whom principally operate in Taiwan, allegedly contracted with plaintiffs to manufacture some of plaintiffs' broadband products.[6]  According to plaintiffs, defendants used their access to plaintiffs' product design "to wrongfully seize control over Plaintiffs' valuable intellectual property"[7] and secretly file patents.[8]  Plaintiffs do not identify the patents they claim defendants filed.  Nor do they identify the country in which these patents were filed.

## II.   LEGAL STANDARD: MOTION TO DISMISS

A complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[9]  While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."[10]  "Factual allegations must be enough to rise above the speculative level."[11]  Thus, to

---

[4] (Dkt. #1 at ¶ 10.)

[5] (Dkt. #1 at ¶ 9-10.)

[6] (Dkt. #1 at ¶ 24-26.)

[7] (Dkt. #76 at 1.)

[8] (Dkt. #1 at ¶ 50.)

[9] Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007).

[10] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[11] *Twombly*, 550 U.S. at 555.

survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."[12]

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering a motion to dismiss. First, the court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth.[13] Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.[14] Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief.[15] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[16] Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged–but not shown–that the pleader is entitled to relief."[17] When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed.[18]

## III. DISCUSSION

### 1. Personal Jurisdiction

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due

---

[12] *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).

[13] *Id*. at 1950.

[14] *Id*. at 1949.

[15] *Id*. at 1950.

[16] *Id*. at 1949.

[17] *Id*. (internal quotation omitted).

[18] *Twombly*, 550 U.S. at 570.

process."[19]  Because "Nevada's long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by federal due process,"[20] I need determine only whether the exercise of jurisdiction over defendants would be consistent with due process.

**A. Minimum Contacts: General Jurisdiction and Specific Jurisdiction**

Due process requires the defendant have at least "minimum contacts" with the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."[21]  "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there."[22]  "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State."[23]

When analyzing whether a defendant has sufficient minimum contacts with a forum state, courts distinguish between general jurisdiction and specific jurisdiction.  General jurisdiction is appropriate when the defendant's forum activities are so "substantial, continuous and systematic"[24] that the defendant can be deemed to be "essentially at home in the forum state."[25] "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in

---

[19] *Pebble Beach v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006).

[20] *Pfister v. Selling Source*, LLC, 931 F. Supp. 2d 11109, 1115 (D. Nev. 2013).

[21] *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

[22] *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

[23] *Walden v. Fiore,* 134 S. Ct. 1115, 1121 (2014).

[24] *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

[25] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *see also Daimler AG v. Bauman*, 134 S.Ct 746, 757-762 (2014).

the world."[26] In this case, none of the parties contends that I could exercise general jurisdiction over defendants.

Specific jurisdiction, on the other hand, exists if "the defendant purposely avails itself of the privilege of conducting activities within the forum State . . . [and] the controversy [is] sufficiently related to or arose out of [the defendant's] contacts with the forum state."[27] "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."[28]

The Ninth Circuit has established a three-prong test for determining specific jurisdiction:

a. The non-resident defendant must purposefully direct its activities or consummate some transaction with the forum or resident thereof, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

b. the claim must be one which arises out of or relates to the defendant's forum-related activities; and

c. the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.[29]

The plaintiff bears the burden of satisfying the first two prongs. If they are satisfied, then the burden shifts to the defendant to show why the exercise of personal jurisdiction would be unreasonable.[30]

---

[26] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

[27] *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F3d 267, 270 (9th Cir. 1995).

[28] *Id.*

[29] *Schwarzenegger*, 374 F.3d at 801.

[30] *Id.*

### (a) Purposeful Availment

The Ninth Circuit treats purposeful availment in tort cases differently from purposeful availment in contract cases.[31] In contract cases, the Ninth Circuit "typically inquires whether a defendant purposefully avails itself of the privilege of conducting activities or consummates a transaction in the forum."[32] In tort cases, on the other hand, the Ninth Circuit applies "an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum."[33] Here, Plaintiffs plead both contract claims and tort claims, so I will analyze each separately.

### i.   Contract Claims (Causes of Action 4 and 9)

The purposeful availment focus in contract cases is on activities such as "delivering goods or executing a contract" within the forum.[34] It is not enough that a defendant has signed a contract with a party that resides in the forum.[35] Courts instead look to whether the defendant has "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state."[36]

Accordingly, the Supreme Court has emphasized "the need for a highly realistic approach when it comes to personal jurisdiction in contract cases," one "that recognizes that [a] 'contract' is ordinarily but an intermediate step serving to tie up prior business negotiations with future

---

[31] *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitism*, 433 F.3d 1199, 1206 (9th Cir. 2006) (quotations omitted).

[32] *Id.*

[33] *Id.* at 1206 (quotations omitted).

[34] *Id.*

[35] *Unocal*, 248 F.3d at 923 ("[A]n individual's contract with an out-of-state party alone cannot establish sufficient minimum contacts to support personal jurisdiction.").

[36] *Id.* at 924.

consequences which themselves are the real objects of the business transaction."[37]  From this emphasis, courts have concluded that "the contemplated future consequences [of a contract] are often of particular significance, with future consequences essentially being where the contract will be performed."[38]  The Ninth Circuit in particular has adopted three factors to consider: (1) prior negotiations and contemplated future consequences, (2) the parties' actual course of dealing, and (3) the terms of the contract.[39]

These factors, however, and the purposeful availment requirement in general, are "but a test for determining the more fundamental issue of whether 'a defendant's conduct and connection with the forum state are such at he should reasonably anticipate being haled into court there."[40]  The key question is one of due process: would it be fair, based on defendants' contacts with Nevada, for them to expect to be have to defend themselves in a Nevada court?

I find that it would not be fair.  Defendant eGTran is incorporated in the British Virgin Islands and has its principal place of business in Taipei, Taiwan. [41]  Defendant EZconn is incorporated in Taiwan and has its principal places of business in China and Taiwan.[42]  Plaintiffs have not pointed to any connection between either eGtran and Nevada or EZconn and Nevada. They have not alleged that either defendant makes or sells products in Nevada or that this

---

[37] *Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985).

[38] *IPS Shared Tech. Servs. v. Overwatch Sys., Ltd*., No. C-14-1112, 2014 U.S. U.S. Dist. LEXIS 69878, at *7 (N.D. Cal. May 20, 2014); *see also Selhorst v. Alward Fisheries, LLC*, No. C-11-3266, 2011 U.S. Dist. LEXIS 120810, at *10-11 (N.D. Cal. Oct 19, 2011).

[39] *Unocal*, 248 F.3d at 924.

[40] *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd*., 784 F.2d 1392, 1397 (9th Cir. 1986). The *Haisten* court also makes clear that "jurisdiction may be exercised with a lesser showing of minimum contact than would otherwise be required if considerations of reasonableness dictate." *Id*. at 1397.

[41] (Dkt. #1 at ¶ 16.)

[42] (Dkt. #1 at ¶ 15.)

1  particular contract was negotiated in Nevada.  Nor do they allege that the parties' contract would
2  be performed in Nevada.

3  Similarly, the parties' actual course of dealing did not involve Nevada.  Plaintiffs do not
4  allege that defendants made any visits to Nevada or that defendants performed any duties here.
5  As for the precise terms of the contract, plaintiffs have not shown how it calls for any
6  performance in Nevada.  Instead, plaintiffs have included a few select quotations from the
7  contract that lay out Plaintiff PTC's general policy regarding the confidential nature of its
8  proprietary information.[43]  But nothing in those quotations connects defendants to Nevada.

9  In sum, plaintiffs fail to show that defendants purposefully availed themselves of the
10 privilege of conducting activities within Nevada.  They therefore cannot establish that specific
11 jurisdiction exists.

### ii.    Tort Claims (All other Causes of Action)

13 The same is true with regard to plaintiffs' tort claims.  In tort cases, the focus of the
14 personal jurisdiction analysis is on "evidence of the defendant's actions outside the forum state
15 that are directed at the forum, such as distribution in the forum state of goods originating
16 elsewhere."[44]  In particular, I apply the "effects test," which requires plaintiffs to show the
17 defendants (1) committed an intentional act (2) expressly aimed at the forum state (3) causing
18 harm that the defendant knows is likely to be suffered in the forum state.[45]

19 Plaintiffs have not demonstrated that defendants' conduct satisfies these three parts.
20 Citing *College Source, Inc. v. AcademyOne, Inc.*,[46] they claim "misappropriation of a forum
21 citizen's proprietary information constitutes an intentional act aimed at a forum citizen."[47]  But in

---

[43] (*See* Dkt. #76 at 2.)

[44] *See Schwarzenegger v. Fred Martin Motor Co.* 374 F.3d 797, 803 (9th Cir).

[45] *Id*. (quotations omitted)

[46] 653 F.3d 1066, 1076 (9th Cir. 2011).

[47] (Dkt. #76 at 7.)

that case, the court was moved by the fact that the misappropriation occurred on the defendant's website for the specific purpose of competing with the plaintiff in the forum.[48]  Plaintiffs have not alleged any facts to show that defendants tried to compete with them in Nevada.[49]  They simply claim that their propriety information was used by defendants to file patents.  They do not identify any information about these patents—where they were filed, what they protected, to what purpose they are being used—to show that defendants committed an intentional act, expressly aimed at Nevada, that caused harm they knew was likely to be suffered in Nevada.

Plaintiffs' reliance on *Consipio Holding, BV v. Carlberg*[50] is similarly misplaced.  That case involved a shareholder's derivative action against non-resident officers and directors.  But neither defendant eGtran nor defendant EZconn is an officer or director, and this case does not involve a derivative action.  *Consipio*, a case Magistrate Judge Foley already cautioned against using,[51] does not apply.

I also find that alter ego theory, agency theory, and conspiracy theory do not apply. Plaintiffs try to use each of these to establish personal jurisdiction, claiming in one paper that these theories apply to EZconn via eGtran and in another that they apply to eGtran via EZconn.[52] But as defendants point out, this reasoning is circular.[53]  Because plaintiffs have not shown that either defendant has sufficient minimum contacts with Nevada, they cannot use one defendant to establish personal jurisdiction over the other.

---

[48] (Dkt. #76 at 7.)

[49] *See Johnson v. Venzon*, No. C12-895RSL, 2012 WL 3778877, at *4-*5 (W.D. Wash. Aug. 30, 2012) (noting the "competing-in-the-forum" language from *CollegeSource* and holding that, "unlike in College Source . . . Plaintiff has not plausibly alleged that Defendants are specifically attempting to compete with him in the Washington market").

[50] 282 P.3d 751, 755 (Nev. 2012).

[51] (See Dkt. #68 at 9 (denying jurisdictional discovery and expressing concern about applying *Consipio* in light of the Supreme Court's ruling in *Shaffer v. Heitner*, 433 U.S. 186 (1997))).

[52] (*See* Dkt. #41 at 11-15; Dkt. #76 at 11-18.)

[53] (*See* Dkt. #78 at 5.)

### 2. Jurisdictional Discovery and Leave to Amend

Plaintiffs request jurisdictional discovery. Magistrate Judge Foley has already denied two requests for jurisdictional discovery,[54] and plaintiffs have not provided any additional facts to show what important issues would be resolved by granting it now.[55] I therefore deny plaintiffs' request.

I also deny plaintiffs' request for leave to amend. Plaintiffs have not identified any new facts they would allege if granted leave.[56] Nor have they complied with Local Rule 15.1, which requires litigants to "attach the proposed amended pleading" to their motion for leave to amend.[57] Plaintiffs have not done that.

Finally, I deny defendants' request for sanctions.

## IV.  CONCLUSION

IT IS HEREBY ORDERED that Defendant eGtran's Motion to Dismiss **(Dkt. #18)** and Defendant EZconn's motion to dismiss **(Dkt. #75)** are both **GRANTED**.

DATED this 25th day of March, 2015.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[54] (*See* Dkt. #68.)

[55] *See, e.g., Lang v. Morris*, 823 F. Supp. 2d 966, 979 (N.D. Cal. 2011) ("Plaintiffs have also not provided any detail to the Court as to what discovery would establish. Therefore, the Court declines to permit jurisdictional discovery as it would appear to be futile in this case.").

[56] *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

[57] *Id*.